# Republic I. & S. Co. *v.* Passafume.

## *Assault and Battery.*

(Decided February 13, 1913.   61 South. 327.)

1. *Evidence; Res Gestae; Agency.*—Where the action was for damages for assault and battery committed by the employees of defendant corporation while acting within the scope of their employment, it was not error to admit evidence that other parties were arrested shortly after plaintiff was shot, where the shooting and the arerst were closely related, and the court limited such evidence to proof of agency existing between defendant and the persons who shot plaintiff.

2. *Same; Opinion; Knowledge Essential.*—While a witness may testify whether certain things may be seen from a given point, it is necessary that he shall actually know whether the things could have been thus seen, and that his testimony is not a mere expression of opinion.

3. *Principal and Agent; Proof of; Circumstantial Evidence.*— Agency may be proved by circumstantial evidence, and may be inferred from other acts similar to the one in question.

4. *Assault and Battery; Evidence.*—Where plaintiff's witness testified that he was standing on a railroad track some distance away, and saw the shot fired that hit plaintiff, the testimony of a witness for defendant who stated that he stood about thirty feet from where the shot was fired, as to whether he could see a man on a railroad track from where he was standing, was properly excluded.

5. *Trial; Argument of Counsel.*—While it is improper for the court in its charge to the jury to state that plaintiff's counsel had so ably stated the law of life expectancy that it was unnecessary for the court to rehearse it, yet where it appeared that counsel had properly stated the law, it cannot be said that the court's charge was erroneous.

(Mayfield, J., dissents.)

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Action by Sam Passafume against the Republic Iron & Steel Company for damages for assault and battery. Judgment for plaintiff, and defendant appeals. Affirmed.

The case made by the complaint is that defendant had a large force of men employed to protect its prop-

erty against trespass, and to keep people off its premises, and that these agents, servants, or employes of defendant assaulted and beat and shot the plaintiff while engaged in the business of defendant, and within the line and scope of their employment.

PERCY, BENNERS & BURR, for appellant. Most of the occurrence to which the evidence relates happened after the shooting, and were hence, not a part of the res gestæ, and should not have been allowed. The court erred in declining to permit Dodd to answer if he could have seen a man standing on the Southern Railway from where he was standing.—*So. Ry. v. Bonner,* 141 Ala. 517; *A. G. S. v. Lynn,* 103 Ala. 134; *McVay v. State,* 100 Ala. 110; *E. T. V. & G. v. Watson,* 90 Ala. 41; *Cox v. State,* 76 Ala. 66. The court erred greatly to the prejudice of appellant in its oral charge.—105 N. W. 594; 70 Ga. 714; *Gothran v. Moore,* 1 Ala. 423; 11 Enc. P. & P. 154. Charges which refer to the jury parts of the pleading as part of the charge, are erroneous.— *B. R. L. & P. Co. v. Fox,* 56 South. 1013; *A. G. S. v. McWhorter,* 47 South. 84; *B. R. L. & P. Co. v. Hayes,* 44 South. 1032; *Equitable M. Co. v. Howard,* 148 Ala. 664.

FRANK S. WHITE & SONS, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—The members of this court, except Mr. Justice MAYFIELD, are of the opinion that there is no reversible error in this record, and this opinion is written for the purpose of giving expression to the views of a majority of the court upon the questions here presented.

1. All of the members of this court are of the opinion that the trial judge committed no error in allowing testi-

mony that parties other than Sam Passafume were arrested shortly after the plaintiff, Sam Passafume, was shot. This testimony was expressly limited by the court, when it was admitted, to proof of agency, as tending to show that the persons who shot the plaintiff and arrested the other parties were acting as agents of the defendant. The shooting and the arrests were closely related, if not parts of the same occurrence. Standing alone, this evidence may have been weak, but in connection with the other facts which appear in the record it became strong. While, at the time this evidence was offered, there had not then been offered other evidence tending to show agency, that evidence was at a later stage of the proceedings introduced.

Agency may be proven by circumstantial evidence, and may be inferred from other acts similar to the one in question.—*Hill v. Helton,* 80 Ala. 528, 1 South. 340.

2. While a witness who is shown to have a knowledge of the facts inquired about may testify that certain things, the subjects of injury, could have been seen, or could not have been seen, from a given point to another given point, nevertheless, in order to so testify, it must be shown that such a witness actually knows that the things could or could not have been seen. In other words, his testimony must not amount to a mere expression of opinion. It must amount to a shorthand rendering of facts within the personal knowledge of the witness.

During the progress of the trial a witness for the plaintiff, W. L. Jones, testified that he stood on the Southern Railway, and saw Frank Phillips shooting. The scene of the shooting was some distance from the Southern Railway. At a later stage of the proceeding, the defendant offered a witness, Dodd, who testified that: "It was 200 or 300 yards from the place of the

shooting to the Southern Railway." Being asked, if he went up the road shown on the diagram drawn on the blackboard to which the witnesses referred in their testimony until he came to the Southern Railway, how far he would be on the Southern Railway from the depot at Republic, he answered that to the best of his recollection it would be 150 to 200 wards. He further testified that he stood about *"30 feet from the place where Frank Phillips* stood in doing the shooting." The trial judge refused to allow the witness to answer the following question propounded to him by the defendant: "Could you have seen a man standing on the Southern Railway from *where you were standing?* As this witness was standing 30 feet from Frank Phillips during the shooting, the witness' answer to the above question could not have shed any legitimate light upon the question as to whether W. L. Jones, on the Southern Railway, saw Frank Phillips shooting. A tree or some other obstruction might have prevented a man standing where witness Dodd stood during the shooting from seeing a man standing on the Southern Railway, while no tree and no other obstruction may have existed which would have prevented Phillips—30 feet from Dodd—from seeing a man on said railway. Other reasons might be advanced which would show that the answer would have been irrelevant and of no material aid to the defendant, but we deem further discussion of the point unnecessary.

3. During his oral charge to the jury the trial judge used the following language "Capt. White has so ably laid down the law of expectancy and the rules that might govern you in the event you were to find for the plaintiff on that I do not deem it necessary to undertake to describe it further, for, were I to do so, I might confuse you, and I feel now he has stated the law so

[Republic I. & S. Co. v. Passafume.]

plainly that it is not necessary for me to rehearse it."
While the trial judge did not we feel confident intend
by the above remarks to give undue prominence and
weight to the argument of one of the plaintiff's counsel,
the necessary tendency of the remarks was to do so.
All of the members of this court are agreed upon the
proposition that the remarks were improper. A major-
ity of the members of this court regard the remarks as
highly improper, and Mr. Justice MAYFIELD is of the
opinion that this cause should be reversed, and a new
trial awarded the defendant because of them.

Parties to a cause are entitled to have all of the law
of the case given to the jury from the lips of the pre-
siding judge. He is in his court the representative of
the law, and the law should come from him. The offices
of counsel and those of the presiding judge are entirely
distinct, and words from a counsel do not, and cannot,
carry that judicial weight which attaches to them when
they come from the lips of the judge, who is the judicial
arbiter of all legal disputes. When a trial judge is
charging a jury, counsel on both sides are attentive to
all that he says. It is now the growing custom for his
charge to be taken down verbatim by a stenographer.
Counsel seize upon his every word, and, if they think
that he has committed error against their client, they
are present and ready to reserve their exception. This
is not true with reference to the arguments of counsel.
While the argument is in progress, opposing counsel
keep up in a general way with the trend of the argu-
ment, but, as the law is expected to come from the court,
they are not expected to weigh, with exact nicety, every
word and sentence used in the argument. As a rule,
the arguments of counsel are not committed to writing
by a stenographer, and, after the argument is conclud-
ed, it is difficult to remember all that was said by

[Republic I. & S. Co. v. Passafume.]

counsel upon a given point. The present bill of exceptions sets out, as we have above quoted it, the remarks of the counsel which were afterwards adopted by the court as a part of his oral charge to the jury; but just below those remarks we find in the bill of exceptions the following: "Defendant's counsel protests that the above is not all that counsel said, but, being overruled, acquiesces." This shows that there was a dispute as to what was, in fact, the charge of the court on the subject of the life expectancy of the plaintiff. This dispute would probably not have occurred if the trial judge had in his own words charged the jury on the subject.

We have, we presume, said enough to indicate that in the future trial judges should be careful to avoid pursuing the course which was pursued by the trial judge in the instant case.

The statement which the counsel made in his address to the jury and which was adopted by the trial judge as a part of his oral charge to the jury was not, however, as it appears in the bill of exceptions, an incorrect statement of the law. It cannot, therefore, be said that the charge of the court on the subject was erroneous.

We are therefore of the opinion that the judgment of the court below must be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON, McCLELLAN, SOMER-VILLE, and DE GRAFFENRIED, JJ., concur.

MAYFIELD, J.—(dissenting).—The trial court in my opinion erred in declining to allow the witness Dodd to testify as to whether or not he could see a man standing on the Southern Railway from the scene of the shooting. The court sustained an objection to a ques-

[Republic I. & S. Co. v. Passafume.]

tion calling for this answer, on the ground that the question called for a conclusion or opinion of the witness. Under the facts shown, such evidence would not have been objectionable on this ground, nor on any other, so far as I can see or know. The witness was shown to have been on the ground and to have had the opportunity of knowing as a fact whether a man on the Southern Railway could have been seen from the scene of the shooting. This was made relevant by the plaintiff having introduced a witness Jones, who testified that he was on the Southern Railway, and from that point he saw the shooting which injured plaintiff. This evidence was therefore competent as tending to rebut or disprove this testimony of the plaintiff.

It has been repeatedly held by this court that a witness who is shown to have a personal knowledge as to the facts inquired about may testify as to whether certain things inquired of could have been seen or heard from one given point to another.—*Bonners' Case*, 141 Ala. 517, 37 South. 702; *Moody's Case*, 92 Ala. 279, 9 South. 238; *Cox v. State*, 76 Ala. 66; *McVay's Case*, 100 Ala. 110, 14 South. 862; *Linn's Case*, 103 Ala. 134, 15 South. 508; *Watson's Case*, 90 Ala. 41-45, 7 South. 813. I am also of the opinion that the trial court fell into reversible error in his instruction to, or declination to instruct, the jury, as to the rules of law governing them in regard to plaintiff's life expectancy. That portion of the charge or declination to charge on this subject, and to which an exception was reserved, was as follows: "Capt. White has so ably laid down the law of expectancy and the rules that might govern you in the event you were to find for the plaintiff on that I do not deem it necessary to undertake to describe it further, for, were I to do so, I might confuse you, and I feel now that he has stated the law so plainly that it is

not necessary for me to rehearse it." This was nothing more nor less than express declination on the part of the trial court to instruct the jury as to the law of the case upon this particular subject further than to refer them to what counsel for plaintiff has said to him upon this subject. This was in effect telling them to do what the plaintiff's counsel said on this subject, if they found for the plaintiff. The court had no right to do this, even though counsel for the plaintiff had stated the law correctly on this subject. It was the duty of the court to instruct the jury on the law as to this subject which was an important element in the case, and the defendant had a right to hear that instruction, and to except to it if defendant thought it was incorrect. It is not the office or function of counsel to instruct the jury as to the law of the case, but that duty the law enjoins upon the judge or judges of the court, and the judge cannot and ought not to be allowed to delegate that authority or power to counsel. While it is the duty of counsel to aid and instruct the judge or court as to the law of the case, it is not his duty or right to instruct the jury upon this question; but to aid them in finding the truth and the facts from the evidence in the case. Suppose a party or his counsel should not have heard the argument of opposing counsel as to the rule of law in question (and he is not required to hear it, although allowed so to do), then he could never know whether the law was charged correctly. He could object or except only in the manner in which the defendant did in this case. This is a practice which should not be allowed, much less encouraged. I do not for one moment suspect that the trial court intended any wrong or injury in making this statement to the jury, but it was nevertheless error.

Under our system of procedure and practice, the litigants have a right to have the court or the judge thereof

[Republic I. & S. Co. v. Passafume.]

instruct the jury as to the law of the case litigated, and this right cannot be denied, nor the duty imposed avoided, by telling the jury that counsel have stated the law correctly, if either one excepts to such action. BRICKELL, C. J., in the case of *Woodbury v. State,* 69 Ala. 245, 44 Am. Rep. 515, had this to say, when the trial court merely read his charge from other decisions of this court: "The instructions were probably intended to be literal extracts from opinions of this court, defining this offense, embodying its elements, so far as the facts of the particular cases, and the questions involved required a definition of the offense, and a description of its constituent ingredients. As applied to the particular cases, the court is committed to their correctness as legal propositions. But it is very far from being a satisfaction of the duty of a primary court in instructing the jury to borrow these propositions, and recite these definitions, without adaptation of them to the facts of the case which is submitted for the consideration and determination of the jury. The mere recitation of definitions, or of elementary principles, is more often calculated to confuse and mislead than to instruct a jury. The instruction given by the court affirmatively ex mero motu should present the particular case in all the phases and aspects in which the jury ought to consider it, not giving any undue prominence to, or leaving in obscurity, any phase or aspect there is evidence tending to support; and if such instructions in effect discard or ignore, and thereby induce the jury to discard or ignore any legal, material element of the offense imputed to the accused, they ought not to be supported." CHILTON, C. J., said, in speaking of erroneous remarks or charges of the court, that, "when error is shown, injury will be presumed, unless the record clearly shows that no injury resulted."

In *Maxwell's Case,* 89 Ala. 164, 7 South. 828, Mc-
Clellan, J., in speaking of the doctrine of error without·
injury, said he thought the rule was the same in civil
and criminal cases, though it was adhered to more
strictly in criminal than in civil cases.  We quote from
that opinion ,that: "It may be, indeed, it is highly
probable, that this evidence did not prejudice the de-
fendant.  Nay, further, we are utterly unable to see
that it did or could have worked him injury.  But on
the other hand, we *cannot affirmatively see that it did
not injure him,* and we do not feel that safety and
certainty, which the rule even in civil cases requires to
rebut the presumption of injury from error, that no
harm was done which would warrant us in holding this
error to have been without prejudice."  An appellate
court can only review the action of a judge—not that
of a jury.  It can review the action of a judge only by
virtue of a statute.  It is a very old statute, but not as
old as jury trial.  It is said· to be the best feature of
the jury system that the law is interpreted by profes-
sional men and applied by laymen, that by this means
the law is divested of all that is not readily compre-
hended by all men, and technicalities become harmless,
or at least less dangerous.

The judge, the professional interpreter of the law, 'is
an important part of a jury trial.  There can no more
be a common-law jury trial without a judge than there
can without a jury.  The law requires him to instruct
the jury in the law of the case, and it is reversible error
for him to fail to do so, or to erroneously instruct them.